THOMAS P. O'BRIEN
United States Attorney
GEORGE S. CARDONA (Cal. Bar #135439)
Chief Assistant United States Attorney
DOUGLAS A. AXEL (Cal. Bar #173814)
Chief, Major Frauds Section
RICHARD E. ROBINSON (Cal. Bar #090840)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0713
    Facsimile: (213) 894-6269
    E-mail: Richard.Robinson@usdoj.gov
        Doug.Axel@usdoj.gov
        George.S.Cardona@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 05-587(D)-JFW |
| Plaintiff, | ) | CASE DISPOSITION AGREEMENT FOR DEFENDANT MILBERG LLP; EXHIBITS A-F |
| v. | ) | |
| MILBERG LLP, | ) | |
| Defendant. | ) | |

1. Defendant Milberg LLP (formerly known as "Milberg Weiss LLP," "Milberg Weiss & Bershad LLP," "Milberg Weiss Bershad & Schulman LLP," "Milberg Weiss Bershad Hynes & Lerach LLP," and "Milberg Weiss Bershad Specthrie & Lerach") ("Milberg LLP") and the United States Attorney's Office for the Central District of California (the "USAO") hereby enter into this agreement (the "Agreement") to resolve as against Milberg LLP: (a) the above-captioned case ("U.S. v. Milberg LLP et al.") and (b) the USAO's criminal investigation regarding conduct described in the second

superseding indictment in <u>U.S. v. Milberg LLP et al.</u> (the "SSI") and/or in Exhibit A to this Agreement (collectively the "Investigated Conduct").

A.     INTRODUCTION

2.     Milberg LLP has been indicted on charges of conspiracy in violation of 18 U.S.C. § 371; mail fraud in violation of 18 U.S.C. §§ 1341, 1346; money laundering in violation of 18 U.S.C. § 1956(h); and obstruction of justice in violation of 18 U.S.C. § 1503, as well as criminal forfeiture pursuant to 28 U.S.C. § 2461(c), 18 U.S.C. § 981(a)(1)(C), and 21 U.S.C. § 853, and 18 U.S.C. § 982(a)(1) and 21 U.S.C. § 853, as set forth in the SSI.

3.     The USAO has determined that entry into this Agreement to resolve both the prosecution of Milberg LLP in <u>U.S. v. Milberg LLP et al.</u> and any further investigation of potential charges against Milberg LLP arising from the Investigated Conduct is appropriate in light of: (a) Milberg LLP's acceptance of responsibility for the conduct in question, as described in paragraphs 6 through 9 of this Agreement; (b) Milberg LLP's commitment to provide full cooperation as directed by the USAO, as described in paragraphs 10 through 12 of this Agreement; (c) Milberg LLP's agreement to pay the United States the total sum of $75,000,000, plus applicable interest, and to take steps necessary to ensure such payments, as described in paragraphs 13 through 19 of this Agreement; (d) Milberg LLP's remedial actions taken to date and to be taken pursuant to this Agreement, as well as its continuing commitment to maintain the "best practices" program, as described in paragraph 20 of this Agreement; (e) the other undertakings Milberg LLP has accepted as set forth in this

Agreement; and (f) the USAO's belief that no attorney currently a partner or associate with Milberg LLP is criminally culpable with respect to the Investigated Conduct.

4.    This Agreement shall be deemed effective as of the last date of execution by a party to this Agreement and shall continue in effect until the later of (a) 24 months from its effective date or (b) the date by which Milberg LLP has satisfied all of its payment obligations under paragraphs 13 through 17 below. The period of time during which this Agreement continues in effect is referred to as the "Agreement Term."

B.    MILBERG LLP'S PROMISES AND OBLIGATIONS

5.    In consideration for the USAO's promises set forth in paragraphs 22 through 25 of this Agreement, Milberg LLP knowingly, voluntarily, and with the advice of counsel, agrees to the following:

(a)    Milberg LLP acknowledges and accepts responsibility for the conduct of its partners, in accordance with paragraphs 6 through 9 of this Agreement;

(b)    Milberg LLP agrees to cooperate with the USAO, as described in paragraphs 10 through 12 of this Agreement;

(c)    Milberg LLP agrees to pay to the United States the total sum of $75,000,000, plus applicable interest, and to take steps necessary to ensure such payments, as more fully provided in paragraphs 13 through 19 of this Agreement;

(d)    Milberg LLP agrees to maintain a "best practices" program, as more fully described in paragraph 20 of this Agreement;

(e)    Milberg LLP agrees to include in any applicable

3

contract a provision binding any acquirer/successor to the obligations of Milberg LLP described in this Agreement, as provided in paragraph 21 of this Agreement;

(f)   Milberg LLP agrees: (i) to toll the federal statute of limitations for any criminal offense charged in the SSI and/or arising from or relating to the Investigated Conduct for the period beginning on May 18, 2006 and continuing to March 31, 2013; (ii) to waive all speedy trial rights it might have pursuant to the Sixth Amendment of the United States Constitution, Title 18, United States Code, Section 3161, and Federal Rule of Criminal Procedure 48(b) for the period beginning on May 18, 2006 and continuing to March 31, 2013; and (iii) to document the tolling of the statute of limitations and waiver of speedy trial rights by delivering to the USAO concurrently with the execution of this Agreement an executed tolling agreement in the form attached hereto as Exhibit B; and

(g)   Milberg LLP agrees: (i) to waive any right it might have to be prosecuted by indictment for the offenses charged in the SSI and/or any other federal criminal offense arising from or relating to the Investigated Conduct; (ii) that any such prosecution may be brought by way of an information rather than an indictment; and (iii) to document its waiver of indictment by delivering to the USAO concurrently with the execution of this Agreement an executed waiver of indictment in the form attached hereto as Exhibit C.

Acceptance of Responsibility

6.   Milberg LLP acknowledges and accepts responsibility for the conduct of its partners as described in the Statement of

4

Facts attached hereto as Exhibit A, with the understanding that the pseudonyms, capitalized terms, and case names used in this Agreement and Exhibit A have the same meanings as are ascribed to them in the SSI.

7.    Milberg LLP agrees that it shall not, through any of its counsel, representatives, partners, associates, or executive employees who has authority to speak and is speaking publicly on behalf of Milberg LLP, make any public statement, including any statement of position in litigation, that in whole or in part contradicts any material fact stated in Exhibit A.  Any such contradictory public statement by Milberg LLP shall constitute a breach of this Agreement as governed by paragraphs 26 through 28 of this Agreement, and Milberg LLP shall thereafter be subject to prosecution pursuant to the terms of this Agreement.

8.    Paragraph 7 above is not intended to apply to any statement made by any individual, as a witness or otherwise, during testimony or otherwise, in connection with or in preparation for proceedings in U.S. v. Milberg LLP et al., or in any proceeding, whether civil, criminal, or administrative, concerning the Investigated Conduct, unless such individual has authority to speak, and is speaking, publicly on behalf of Milberg LLP.

9.    Subject to Milberg LLP's obligations as set forth in paragraphs 6 through 8 above, this Agreement shall not limit Milberg LLP's ability to raise and support defenses and/or assert and support affirmative claims in any civil or administrative proceedings relating to the Investigated Conduct.

5

Cooperation

10. Milberg LLP agrees to cooperate fully with the USAO, the United States Postal Inspection Service, the Internal Revenue Service, and any other agency designated by the USAO, regarding the Investigated Conduct.

11. Milberg LLP's obligation to cooperate is not limited to the Agreement Term but shall extend until the completion of the USAO's prosecution of U.S. v. Milberg LLP et al. and any related case.

12. Milberg LLP agrees that its cooperation shall require the following:

(a) Complete and truthful disclosure of all non-privileged information as may be requested by the USAO with respect to the activities of Milberg LLP and its present and former partners, employees, and agents concerning all matters relating to the Investigated Conduct;

(b) On request from the USAO, assembling, organizing, and providing all non-privileged documents, records, or other tangible evidence in Milberg LLP's possession, custody, or control, concerning all matters relating to the Investigated Conduct;

(c) Providing access to the USAO, and any law enforcement agencies designated by the USAO, to inspect and copy all non-privileged records and documents relating to the Investigated Conduct that are in the possession, custody, or control of Milberg LLP, whether located at Milberg LLP's offices or kept offsite in storage;

(d) Using its best efforts to facilitate the

6

availability of its present and former partners and employees to provide information and/or testimony as requested by the USAO, including sworn testimony in U.S. v. Milberg LLP et al. and any related case, as well as for interviews with federal law enforcement authorities; and

(e)  Providing non-privileged testimony and other information deemed necessary by the USAO or a court to identify or establish the original location, authenticity, or other evidentiary foundation necessary to admit into evidence documents in U.S. v. Milberg LLP et al. or any other proceeding as requested by the USAO.

Monetary Payments

13.  Milberg LLP agrees to pay the sum of $60,000,000, plus applicable interest thereon, as a criminal monetary penalty, which sum shall be paid to the United States Treasury by electronic funds transfer, pursuant to instructions to be provided by the USAO, in the following installments:

(a)  $12,500,000 upon execution of this Agreement to a trust account of Zuckerman Spaeder LLP, which amount shall be paid to the United States Treasury within 5 days of the entry of dismissal pursuant to paragraph 22 below;

(b)  $10,000,000, plus applicable interest thereon, on or before December 31, 2009;

(c)  $10,000,000, plus applicable interest thereon, on or before December 31, 2010;

(d)  $10,000,000, plus applicable interest thereon, on or before December 31, 2011; and

(e)  $17,500,000, plus applicable interest thereon, on

or before December 31, 2012.

14. Milberg LLP agrees to pay, pursuant to instructions to be provided by the USAO, the additional sum of $15,000,000, plus applicable interest thereon, to the United States Postal Inspection Service Consumer Fraud Fund (the "Consumer Fraud Fund"), to further the efforts of the Postal Inspection Service in preventing frauds on consumers, which sum shall be paid by electronic funds transfer, pursuant to instructions to be provided by the USAO, in the following installments:

(a) $10,000,000 upon the execution of this Agreement to a trust account of Zuckerman Spaeder LLP, which amount shall be paid to the Consumer Fraud Fund within 5 days of the entry of dismissal pursuant to paragraph 22 below; and

(b) $5,000,000, plus applicable interest thereon, on or before December 31, 2009.

15. Milberg LLP will pay interest on each of the installments described in paragraphs 13(b) through (e) and 14(b) above from the date of execution of this Agreement to the date of each such installment payment. Simple interest on the outstanding balance of each installment shall be calculated each calendar quarter using the lesser of (a) the published Wall Street Journal Prime Rate effective on the last business day of that quarter or (b) 5% per annum. Milberg LLP at its own election may make payment in advance of the due date for any of the installments provided by paragraphs 13 through 15, consisting of the principal and accrued interest thereon as of the payment date, without additional charge or penalty.

16. During the Agreement Term, in the event that Milberg

LLP's Gross Revenues (as defined below) exceed either $40,000,000 for any calendar quarter or $120,000,000 for any consecutive 4 calendar quarters commencing July 1, 2008, Milberg LLP will within 45 days of receipt of such revenues exceeding the amounts specified above ("excess Gross Revenues") pay to the United States the lesser of:

(a)     The balance of all unpaid installments described in paragraphs 13(b) through (e) and 14(b) above; or

(b)     Fifty-five (55%) of the amount by which Gross Revenues exceeds $40,000,000 for that calendar quarter or $120,000,000 for 4 consecutive calendar quarters, whichever is greater.

For purposes of this Agreement, "Gross Revenues" means aggregate gross revenues from all sources, prior to any taxes, including but not limited to cash and cash equivalents received from any former Milberg LLP partner or the Coughlin Stoia Geller Rudman & Robbins LLP law firm ("Coughlin LLP") but excluding: (i) any amounts due to Coughlin LLP pursuant to the May 1, 2004 agreement between Coughlin LLP and Milberg LLP (the "Separation Agreement"); (ii) any amounts due for referrals approved by the Compliance Monitor in accordance with Exhibit F hereto; (iii) in any case in which Milberg LLP receives aggregate attorneys' fees, any amounts due to co-counsel of record consistent with the court's fee orders, if any, in such case; (iv) loan proceeds to be used in the ordinary course of business to fund the operations of Milberg LLP; and (v) any excess Gross Revenues upon which payment was made pursuant to this paragraph 16.

17.     Payments made pursuant to paragraph 16 above shall be

applied to satisfy the unpaid balances of the installments
described in paragraphs 13 and 14 above in the following order:

      (a)   installment described in paragraph 14(b); then

      (b)   installment described in paragraph 13(b); then

      (c)   installment described in paragraph 13(e); then

      (d)   installment described in paragraph 13(d); then

      (e)   installment described in paragraph 13(c).

18. Until such time as Milberg LLP has fully satisfied all
its payment obligations under paragraphs 13 through 17 above,
Milberg LLP will:

(a) provide a written report to the USAO no later than
15 days after the last day of each calendar quarter, that
accurately states:

(i) the amount of Gross Revenues for the
quarterly period, specifically identifying any and all sources of
Gross Revenues during the reporting period that exceed $500,000.
For example, if Gross Revenues exceeding $500,000 derive from
attorneys' fees and cost reimbursement obtained by Milberg LLP in
connection with a particular lawsuit, the name, case number, and
court for that lawsuit will be identified in the report, as well
as the amounts of gross attorneys' fees and costs received;

(ii) any payments to Coughlin LLP pursuant to the
Separation Agreement;

(iii) any referrals paid, together with a
statement as to whether such referrals were approved by the
Compliance Monitor;

(iv) any payments to co-counsel of record from
aggregate fees received by Milberg LLP, together with a copy of

10

1 | any fee orders by the court in such case;

2 | (v) any other division or sharing of attorneys'
3 | fees received by Milberg LLP with another lawyer or law firm
4 | which was not counsel of record in the case in which those fees
5 | were awarded, together with a statement as to whether such
6 | division or sharing of attorneys' fees was approved by the
7 | Compliance Monitor; and

8 | (vi) any proceeds from loans, and the existence
9 | of any line of credit or other financial accommodation, exceeding
10 | $500,000, together with a description of any security interests
11 | or liens granted by Milberg LLP to secure such loans or lines of
12 | credit or financial accommodations.

13 | (b) provide written notice to the USAO of the amount
14 | by which its Gross Revenues have exceeded $40,000,000 for the
15 | preceding calendar quarter or $120,000,000 for the preceding
16 | consecutive 4 calendar quarters, no later than 15 days after such
17 | excess Gross Revenues are in the possession, custody, or control
18 | of Milberg LLP.

19 | Consent Judgment

20 | 19. Concurrent with the execution of this Agreement, the
21 | parties shall execute a Stipulation for Entry of Consent Judgment
22 | with respect to all of the amounts not yet paid under paragraphs
23 | 13 through 15 above. The USAO may immediately file,
24 | notwithstanding paragraphs 26 through 28 below, the Stipulation
25 | for Entry of Consent Judgment and the Complaint and Consent
26 | Judgment based thereon (copies of which are attached hereto as
27 | Exhibits D and E, respectively), if and only if Milberg LLP
28 | defaults on any payment obligation set forth in paragraphs 13

11

through 17 above. The USAO may also file the Stipulation for Entry of Consent Judgment and the civil Complaint and Consent Judgment based thereon following a final determination of breach pursuant to paragraphs 26 through 28 below. In the event of such default or breach, Milberg LLP shall be obligated immediately to pay a sum of all of the amounts not yet paid under paragraphs 13 through 15 of this Agreement. The parties agree that the Court shall have jurisdiction and venue over the civil Complaint in order to enforce the Consent Judgment in the event of a default or breach by Milberg LLP, as provided by this paragraph.

Remedial Measures

20. Milberg LLP agrees, within 30 days of the execution of this Agreement, to maintain and enforce a "best practices" program at Milberg LLP as further described in Exhibit F, to avoid any potential future misconduct of the type described in Exhibit A, which "best practices" program shall be maintained and continue in place until 24 months after the execution of this Agreement. No later than 45 days after the execution of this Agreement, Milberg LLP will provide to the USAO a written certification from the Compliance Monitor (as defined in Exhibit F) confirming that the "best practices" program is in place at Milberg LLP and is being enforced satisfactorily; and thereafter such certifications by the Compliance Monitor shall be provided to the USAO every three months until 24 months after the execution of this Agreement.

Acquirer/Successor Obligations

21. Milberg LLP agrees that if it sells or transfers all or a majority (by value) of its assets (including accounts

receivable and cash), case inventory, or business operations as they exist as of the effective date of this Agreement to one or more other law partnership(s), corporation(s), sole proprietorship(s), or any other acquirer during the term of this Agreement, it shall include in any applicable contract a provision binding the acquirer/successor to the obligations of Milberg LLP described in this Agreement. This paragraph 21 does not apply:

(a) to any partner, associate, or employee of Milberg LLP, or any group of partner(s), associates(s), or employees(s) of Milberg LLP who, consistent with the terms of the partnership agreement, terminate their respective relationship(s) with Milberg LLP, so long as such termination does not include a transfer of all or majority (by value) of Milberg LLP's assets (including accounts receivable and cash), case inventory, or business operations as they exist as of the effective date of this Agreement; or

(b) to any security interests or liens granted by Milberg LLP to secure loans or other financial accommodations made to the firm in the ordinary course of its business to fund the operations of Milberg LLP or to the exercise by such secured creditors of their respective rights and remedies.

C. THE USAO's PROMISES AND OBLIGATIONS

Dismissal

22. Upon Milberg LLP's completion of all its obligations set forth in paragraphs 5(f), 5(g), 13(a), 14(a), and 19 above, and Milberg LLP's provision of the initial compliance certification required by paragraph 20 above, the USAO will move

13

to dismiss without prejudice the SSI in <u>U.S. v. Milberg LLP et al.</u> as against Milberg LLP only. Milberg LLP agrees that such dismissal shall be without prejudice to any subsequent reinstating of the charges against Milberg LLP in the SSI, in accordance with this Agreement, which is expressly conditioned upon such dismissal.

Non-Prosecution

23. Subject to the breach provisions of paragraphs 26 through 28 below, the USAO agrees:

(a) Not to prosecute Milberg LLP for any crimes arising out of any of the Investigated Conduct occurring prior to May 18, 2006 (collectively the "non-prosecution conduct"). The non-prosecution provisions of this sub-paragraph 23(a) are binding on the USAO, the United States Attorney's Offices for each of the other 93 judicial districts of the United States ("the other USAOs"), and the United States Department of Justice ("DOJ"); and

(b) Not to pursue any additional civil or criminal forfeiture claims against Milberg LLP based on conduct occurring prior to the execution of this Agreement and arising out of the non-prosecution conduct.

24. Except as expressly provided in paragraph 23 above, this Agreement does not preclude or limit the USAO, the other USAOs, or DOJ from investigating or prosecuting Milberg LLP or any other individuals or entities, including any present or former partners or employees of Milberg LLP.

25. Nothing in this Agreement shall preclude or limit the USAO, the other USAOs, or DOJ from bringing a criminal

14

prosecution against Milberg LLP for making false statements, obstruction of justice, perjury, subornation of perjury, or aiding and abetting or conspiring to commit such offenses based on Milberg LLP's conduct in performing its obligations under this Agreement.

### D. BREACH OF AGREEMENT

26. It shall constitute a breach of this Agreement for Milberg LLP, during the Agreement Term, to commit any federal crime or to knowingly engage in conduct that constitutes a material failure to abide by or fully perform any of its promises and obligations set forth in paragraphs 5 through 21 of this Agreement, including any default on any of the payment obligations set forth in paragraphs 13 through 17 above.

27. In the event that the USAO determines, in its sole discretion, that Milberg LLP has breached this Agreement, the USAO shall provide Milberg LLP with written notice of this determination, and thereafter:

(a) Milberg LLP shall have 14 calendar days from the date of that written notice in which to make a presentation to the USAO to demonstrate that in fact no breach has occurred or, to the extent applicable, that the breach is not a knowing breach or has been cured;

(b) the USAO shall thereafter provide written notice to Milberg LLP of its final determination regarding whether or not a breach has occurred; and

(c) Milberg LLP shall thereafter have 30 days to obtain a decision from a higher authority within DOJ reversing or modifying the USAO's determination that Milberg LLP has breached

this Agreement -- in the absence of such a decision, the USAO's determination of breach shall become final.

28. Should there be a final determination, in accordance with the procedures set forth in paragraph 27 above, that Milberg LLP has breached this Agreement, then:

(a) Milberg LLP shall be released from its cooperation obligations referenced in paragraphs 10 through 12 above, and its maintenance of the "best practices" program referenced in paragraph 20 above;

(b) the United States shall not be obligated to repay any amounts paid under paragraphs 13 through 17 and 19 of this Agreement, Milberg LLP shall be obligated immediately to pay all of the amounts not yet paid under paragraphs 13 through 15 of this Agreement, and the USAO will immediately be free to file the Stipulation for Entry of Consent Judgment, the civil Complaint, and the Consent Judgment described in paragraph 19 above;

(c) the USAO, the other USAOs, and DOJ shall immediately be free to use the waiver of indictment provided by Milberg LLP in Exhibit C attached hereto and to prosecute Milberg LLP by way of information for any federal offense relating to the Investigated Conduct;

(d) any such prosecution by the USAO, the other USAOs, or DOJ may be premised upon any documents, testimony or other information provided by or on behalf of Milberg LLP to the USAO or any government agency at any time. Milberg LLP shall be unable to assert that any such documents, testimony, or other information: (i) were obtained in violation of any constitutional, statutory, or rule-based right or privilege; (ii)

are subject to any attorney-client privilege or work product
protection that may be claimed by Milberg LLP; or (iii) are
inadmissible because of Rule 11(f) of the Federal Rules of
Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or
any other constitutional provision, statute, or rule;

(e)  In any proceeding or trial in any criminal
prosecution relating to the Investigated Conduct, Milberg LLP
shall be deemed to stipulate to the admissibility into evidence
of Exhibit A as an admission by Milberg LLP, and shall be
precluded from offering any evidence or argument that the facts
stated in Exhibit A are untrue or misleading; and

(f)  In any proceeding or trial in any criminal
prosecution relating to the Investigated Conduct, Milberg LLP
shall be precluded from asserting any claim or defense based on:
(i) preindictment delay with respect to any period of time
between May 18, 2006 and March 31, 2013; (ii) any violation of
any speedy trial rights that have been waived by Milberg LLP as
provided in Exhibit B hereto; and (iii) any statutes of
limitations that have been tolled by Milberg LLP as provided in
Exhibit B hereto.

In the event Milberg defaults on the payment obligations
under paragraphs 13 through 17 above, entry of the Consent
Judgment pursuant to paragraph 19 does not preclude other
non-monetary remedies under this paragraph.  In the event that
the USAO finally determines to prosecute the Firm under this
paragraph, the financial penalty to be sought by the USAO in such
a prosecution shall be limited to the unpaid amount of the
payments provided for in paragraphs 13 and 14 of this agreement,

plus accrued interest, and the USAO agrees not to seek any additional amounts in forfeiture, fines, penalties, or other financial remedies.

E.    SCOPE OF THE AGREEMENT

29.    Except as specified in sub-paragraph 23(a) above, which makes the non-prosecution provisions of this Agreement binding on the USAO, the other USAOs, and DOJ, this Agreement is binding only on Milberg LLP and the USAO, and does not bind any other federal, state, or local agency or prosecuting authority, or any federal, state, or local administrative or regulatory authority.

F.    MISCELLANEOUS PROVISIONS

30.    This Agreement, with its attached Exhibits A through F, sets forth all the terms of the agreement between Milberg LLP and the USAO.    No modifications or additions to this Agreement, or to its attached Exhibits A through F, shall be valid unless they are

///

///

in writing and signed by the USAO, Milberg LLP's

attorneys, and a duly authorized partner of Milberg LLP.

AGREED AND ACCEPTED:

UNITED STATES DEPARTMENT OF JUSTICE:


_____     6/16/2008
GEORGE S. CARDONA                    Date
Chief Assistant United States Attorney
Central District of California

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA:


_____     6/16/2008
GEORGE S. CARDONA                    Date
Chief Assistant United States Attorney


_____     6/16/08
DOUGLAS A. AXEL                      Date
Assistant United States Attorney
Chief, Major Frauds Section


_____     6/16/08
RICHARD E. ROBINSON                  Date
Assistant United States Attorney
Major Frauds Section


Milberg LLP



_____     _____
                                     Date
Partner
Milberg LLP

## CERTIFICATIONS

    I, _____, am a partner of the law firm

Milberg LLP, formerly known as "Milberg Weiss LLP," "Milberg

in writing and signed by the USAO, Milberg LLP's

attorneys, and a duly authorized partner of Milberg LLP.

AGREED AND ACCEPTED:

UNITED STATES DEPARTMENT OF JUSTICE:


_____     _____
GEORGE S. CARDONA                    Date
Chief Assistant United States Attorney
Central District of California

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA:


_____     _____
GEORGE S. CARDONA                    Date
Chief Assistant United States Attorney


_____     _____
DOUGLAS A. AXEL                      Date
Assistant United States Attorney
Chief, Major Frauds Section


_____     _____
RICHARD E. ROBINSON                  Date
Assistant United States Attorney
Major Frauds Section

Milberg LLP

_____     _____
Partner                              Date
Milberg LLP

## CERTIFICATIONS

I, _SANFORD P. DUMAIN_, am a partner of the law firm

Milberg LLP, formerly known as "Milberg Weiss LLP," "Milberg

Weiss & Bershad LLP," "Milberg Weiss Bershad & Schulman LLP,"
"Milberg Weiss Bershad Hynes & Lerach LLP," and "Milberg Weiss
Bershad Specthrie & Lerach" ("Milberg LLP"), and am duly
authorized, in accordance with all requirements of the Milberg
LLP partnership agreement, to enter into this Agreement on behalf
of Milberg LLP.  I understand the terms of this Agreement, and I
voluntarily, knowingly, and willfully agree, on behalf of Milberg
LLP, to all of those terms without force, threat, or coercion.
No promises, representations, or inducements, other than those
set forth in this Agreement, have been made to Milberg LLP or me
to cause me to enter into this Agreement on behalf of the law
firm.  Milberg LLP's counsel of record, Zuckerman Spaeder LLP and
Mayer Brown LLP, as well as Viet Dinh, a principal of Bancroft
Associates PLLC, have advised Milberg LLP concerning this
Agreement, including the rights and defenses that Milberg LLP
will be giving up by entering into the Agreement.  Milberg LLP
and I are satisfied with the counsel that Zuckerman Spaeder LLP,
Mayer Brown LLP, and Viet Dinh have provided to Milberg LLP in
this matter.

_____          _____6/16/08_____
                                          Date
Partner,
Defendant Milberg LLP


        I, Bryan Daly, a member of the law firm Mayer Brown LLP, am
counsel of record in this case for defendant Milberg LLP.  I
believe that _Sanford P. Dumain_ is a partner of Milberg LLP
who is duly authorized to enter into this Agreement on behalf of

20

Milberg LLP.  To the best of my knowledge and belief, Milberg
LLP's decision to enter into this Agreement is an informed and
voluntary one.

_____          6|16|08
BRYAN DALY                               Date
Mayer Brown LLP
Counsel for Milberg LLP


    I, William W. Taylor, a member of the law firm of Zuckerman
Spaeder LLP, am counsel of record in this case for defendant
Milberg LLP.  I believe that _____ is a partner
of Milberg LLP who is duly authorized to enter into this
Agreement on behalf of Milberg LLP.  To the best of my knowledge
and belief, Milberg LLP's decision to enter into this Agreement
is an informed and voluntary one.



_____          _____
WILLIAM W. TAYLOR, III                   Date
Zuckerman Spaeder LLP
Counsel for Milberg LLP


    I, Viet D. Dinh, a principal of Bancroft Associates PLLC,
serve as counsel for Milberg LLP to independently advise and
assist Milberg LLP in negotiating this  Agreement with the USAO.
I have carefully reviewed and discussed the terms of this
Agreement with _Sanford P. Dumain_, whom I believe is a partner
of Milberg LLP duly authorized to enter into this Agreement on
behalf of Milberg LLP.  To the best of my knowledge and belief,
Milberg LLP's decision to enter into this Agreement is an
///

Milberg LLP.  To the best of my knowledge and belief, Milberg

LLP's decision to enter into this Agreement is an informed and

voluntary one.


_____        _____

BRYAN DALY                                Date
Mayer Brown LLP
Counsel for Milberg LLP


    I, William W. Taylor, a member of the law firm of Zuckerman

Spaeder LLP, am counsel of record in this case for defendant

Milberg LLP.  I believe that JANford P. Vumain is a partner

of Milberg LLP who is duly authorized to enter into this

Agreement on behalf of Milberg LLP.  To the best of my knowledge

and belief, Milberg LLP's decision to enter into this Agreement

is an informed and voluntary one.


_____        6/16/08
WILLIAM W. TAYLOR, III                    Date
Zuckerman Spaeder LLP
Counsel for Milberg LLP


    I, Viet D. Dinh, a principal of Bancroft Associates PLLC,

serve as counsel for Milberg LLP to independently advise and

assist Milberg LLP in negotiating this  Agreement with the USAO.

I have carefully reviewed and discussed the terms of this

Agreement with _____, whom I believe is a partner

of Milberg LLP duly authorized to enter into this Agreement on

behalf of Milberg LLP.  To the best of my knowledge and belief,

Milberg LLP's decision to enter into this Agreement is an

///

21

informed and voluntary one.

_____          6/16/08
VIET D. DINH                       Date
Bancroft Associates PLLC
Counsel for Milberg LLP

22