**EXHIBIT F TO MILBERG LLP CASE DISPOSITION AGREEMENT**

# EXHIBIT F
# BEST PRACTICES PROGRAM

INTRODUCTION

1. Milberg LLP (the "Firm") voluntarily implemented a "best practices" program on or about February 8, 2006 and it agrees to maintain the program as described herein for 24 months after the execution of its Case Disposition Agreement (the "Agreement") with the United States Attorney's Office for the Central District of California (the "USAO").

THE PROGRAM

2. The Firm agrees to:

   (a) ensure full compliance with all legal and ethical rules and requirements applicable to the Firm's payment of, or arrangement to pay, any (1) referral fee, co-counsel fee, or other fee division or fee sharing; (2) expert witness; or (3) significant political contribution, charitable contribution, or gift (collectively referred to hereinafter as the "Rules");

   (b) require every attorney in the Firm, when entering into any arrangement to pay a referral fee or other fee division or sharing of fees, to prepare and promptly provide to the Compliance Monitor (as defined below) "front end" documents that (1) specify the terms of and justification for the arrangement; (2) in the case of any referral fee arrangement, include written representation(s) from the individual or entity who is expected to share in the fees that the arrangement meets the legal and ethical requirements of all applicable jurisdictions, including the jurisdiction(s) applicable to the individual or entity who is expected to share in the fees; and (3) in the case of any referral fee arrangement, include written representation(s) from referring counsel and the referred client that the client has knowingly consented to the referral fee arrangement and will not receive any direct or indirect pecuniary benefit from such arrangement;

   (c) promptly disclose to the Compliance Monitor any modification of an arrangement provided to the Compliance Monitor pursuant to subparagraph (2)(b);

   (d) require that upon the resolution of litigation in which the Firm intends to pay any referral fee, co-counsel fee, and/or any other fee division or sharing of

1

fees, a responsible Firm attorney prepare and promptly provide to the Compliance Monitor "back end" documents that (1) specify each such intended payment(s); (2) contain an explanation of the propriety of such payment(s); and (3) in the case of any referral fee payment, include written representations from the individual or entity receiving such referral fee payment(s) that no portion of such fee has been or will be paid over directly or indirectly to any litigation plaintiff(s);

    (e) hold payments of referral fees or any other fee division or sharing of fees (other than payments to co-counsel of record) until the required "back end" documentation has been scrutinized and approved by the Compliance Monitor;

    (f) in connection with any court filing by the Firm seeking approval of an attorney fee award, disclose to the court (1) the existence of any arrangement by the Firm to share the requested fees with any person other than co-counsel of record in the case, (2) the identity of such person or persons, and (3) an offer to provide the court with the terms of such arrangement(s) upon request by the court;

    (g) retain the "front end" and "back end" documents described above during the Agreement Term (as defined in the Agreement);

    (h) disclose to the Compliance Monitor and, upon the recommendation of the Compliance Monitor, disclose to the relevant court(s), any relationship between any referring party, co-counsel, or other firm or individual sharing in the fee in any case, on the one hand, and persons or entities associated with such firm or individual, on the other hand, that may present a conflict of interest or the appearance of a conflict of interest;

    (i) with respect to any expert witness, disclose to the Compliance Monitor any compensation obligation or arrangement benefitting the witness that depends in whole or in part upon the success of any litigation (i.e. not only the litigation in which the individual is serving as an expert witness);

    (j) in connection with any motion to approve a client of the Firm as a lead plaintiff in any class action or shareholder derivative action, disclose to the Compliance Monitor and, upon the recommendation of the Compliance Monitor, disclose to the court presiding over such action any fee arrangement between the Firm and such client;

1         (k)     notify the Compliance Monitor of any disclosures made to third parties, including but not limited to any courts, pursuant to this Program, and provide copies of such disclosure(s) to the Compliance Monitor; and

        (l)     take appropriate steps to identify and ensure the propriety of significant political contributions, charitable contributions, and gifts by the Firm and maintain a central record under the supervision of the Compliance Monitor of all significant political contributions, charitable contributions, and gifts by the Firm.

COMPLIANCE MONITOR

3.     The Firm agrees to maintain a designated Compliance Monitor whose primary responsibility is to oversee and maintain the Program. "Compliance Monitor" herein means the Compliance Monitor or the Compliance Monitor's designee, acting at the direction and under the supervision of the Compliance Monitor.

4.     The designated Compliance Monitor shall be Bart M. Schwartz, who has been serving as a monitor for the Firm since the Firm voluntarily chose to retain him in that role prior to in or about February 2006. The Firm shall not substitute anyone else as Compliance Monitor during the Agreement Term (as defined in the Agreement) without prior approval from the USAO, which shall not be unreasonably withheld.

5.     The Firm agrees to :

        (a)     cooperate fully, and ensure that all of the Firm's partners, associates, and employees cooperate fully, with the Compliance Monitor in the exercise of his or her duties as described in paragraph 6 below;

        (b)     make available to the Compliance Monitor all records, including financial and banking records, to which the Compliance Monitor may seek access in the course of performing his or her duties, with the exception of records subject to the attorney-client or work product protections of the Firm's clients. The Firm's financial records relating to fee agreements, referral fees, co-counsel fees, and any other fee division or fee sharing are not subject to the privilege or work product protection for purposes of the Compliance Monitor's review;

        (c)     prepare and deliver to the Compliance Monitor all reports necessary to perform his or her duties;

(d) provide the Compliance Monitor with a secure office and facilities in the Firm's New York office;

(e) report immediately to the Compliance Monitor any violation or potential violation of the Program, the Agreement, or any of the Rules; and

(f) fund reasonable requests by the Compliance Monitor for assistance of additional experts such as ethics counsel.

6. The Compliance Monitor will take all reasonable steps to ensure that the Firm is in compliance with all of its obligations under this Program, the Agreement, and all of the Rules. Such reasonable steps include, but are not necessarily limited to, the following:

(a) interviewing each attorney in the Firm to explain the Program and the obligations of the Firm, the attorney, and the Compliance Monitor under the Program;

(b) promptly reviewing all documentation submitted by the Firm to the Compliance Monitor pursuant to the Program;

(c) maintaining all proper and necessary auditing procedures;

(d) maintaining a secure office in the Firm's premises for the purpose of providing ongoing consultation to any of the Firm's attorneys regarding the Program, the Agreement, or any of the Rules;

(e) promptly reporting any potential or actual failure of the Firm to comply with its obligations under the Program, the Agreement, or any of the Rules to the Firm's Management Committee, and promptly investigating any potential failure to determine whether there is in fact a failure to comply;

(f) promptly reporting to the USAO any failure of the Firm to comply with its obligations under the Program, the Agreement, or any of the Rules; and

(g) appropriately documenting and maintaining documentation of all transactions or issues submitted to, or identified by, the Compliance Monitor in furtherance of his or her duties under this paragraph 6.

COMMUNICATIONS AND CONFIDENTIALITY

7. The USAO may make reasonable inquiries directly to the Compliance Monitor to ensure the Firm's compliance with, and the Compliance Monitor's monitoring

of the Firm's compliance with, the Program. The Compliance Monitor shall promptly respond to such inquiries.

8. The USAO, the Firm, and the Compliance Monitor (the "Parties") agree that:

(a) a confidential relationship between the Firm and the Compliance Monitor currently exists;

(b) a confidential relationship between the Parties has been established pursuant to the Agreement and this Exhibit;

(c) no information, report, or other material exchanged between the Compliance Monitor and the Firm pursuant to the Agreement shall be disclosed to any third party without the express written consent of the Firm and the Compliance Monitor. Nothing in this subparagraph shall be construed to limit its applicability to any information, report, or other material that the Firm or the Compliance Monitor, or both, consider confidential.

(d) the USAO shall treat as confidential all submissions by the firm, the Compliance Monitor, or both received pursuant to the Agreement or this Exhibit and shall disclose such information only as required by law or for other proper purpose, after reasonable notice to the Firm;

(e) nothing in this paragraph (8) shall limit the USAO's ability to use any information obtained pursuant to the Agreement or this Exhibit to enforce the Agreement.

9. Should any effort be made (a) either by subpoena or otherwise to gain access to information, materials, documents, work product or information of any kind in the possession of the Compliance Monitor that has been generated, obtained or learned as a result of the work performed by the Compliance Monitor in connection with the Program or (b) to otherwise stop, interrupt or interfere with the performance of the Compliance Monitor's work in connection with the Program, whether by judicial action or other means, then in such event and, to the extent feasible and permissible by law under the circumstances, the Compliance Monitor shall promptly notify both the Firm and the USAO and follow lawful directions from the Firm with respect to the Compliance Monitor's response to any such effort.